

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-13-2008

# Gunawan v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2995

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Gunawan v. Atty Gen USA" (2008). *2008 Decisions.* Paper 1229.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1229

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-2995
_____

SONNY GUNAWAN,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES
_____

Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA No. A79-331-373)
Immigration Judge:  Rosalind K. Malloy
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 7, 2008

Before: RENDELL, GREENBERG and VAN ANTWERPEN, Circuit Judges

(Filed May 13, 2008)
_____

OPINION OF THE COURT
_____

PER CURIAM

Sonny Gunawan, an ethnically Chinese native and citizen of Indonesia, entered the

United States in 1999.  In 2001, the Government charged him as removable for

overstaying his visa.  Gunawan conceded the charge but sought asylum, withholding, and

protection under the Convention Against Torture ("CAT").

Gunawan based his claims for relief from removal on his experiences as an ethnically Chinese Christian in Indonesia. Specifically, in 1995, he and his friend Bobby were riding a motorcycle home from school. Native Indonesians riding on motorcycles near them called for them to stop, but Gunawan, afraid that they would be robbed, urged his friend to continue on. Gunawan got home safely, but the motorcyclists attacked his friend Bobby after he left Gunawan's house. In stealing his motorcycle, they stabbed him, and he died the next day from his wounds.

Later (around 1996 when Gunawan returned to Indonesia after studying English in Australia), his car stopped when he tried to drive in heavy rains and through a flooded area. Four Indonesian teenagers approached him while he was stuck. Instead of offering him help, as he expected, they clogged his muffler and banged on his car, demanding money. After he gave them money, they went away.

Gunawan left Indonesia again for his studies, but when he returned, he faced another troubling incident. In 1997, he was returning home from church with family members when they encountered a group of native Indonesian soccer fans. The soccer fans banged on the car, hitting and smashing the windshield, and scratched the exterior with coins. When they realized the car's occupants were ethnically Chinese, they broke the windows, and one grabbed Gunawan's sister's Bible, threw it at her, and told her to eat the Bible.

Gunawan also reported that his father's store was set on fire and looted during the

2

1998 riots. His father did not reopen the store after it was destroyed, although he and

Gunawan's mother continue to live in Indonesia (one of his sisters is now in Singapore,

and the other resides in the United States). His mother warns him that Indonesia remains

a dangerous place and notes that she does not go out when soccer fans might be

congregating. In support of his claims about the dangers he would face if removed to

Indonesia, Gunawan also presented the 2004 Department of State Human Rights Practices

and Religious Freedom Reports.

The Immigration Judge ("IJ") concluded that Gunawan was ineligible for asylum

because his application was untimely filed. The IJ denied Gunawan's request for

withholding and CAT relief. The IJ determined that Gunawan had not shown past

persecution on account of his religion or ethnicity (or any other protected ground) or

established that there is a clear probability that he would suffer future persecution if

removed to Indonesia. In a short order, the BIA dismissed Gunawan's appeal from the

IJ's decision. Among other things, the BIA specifically held that Gunawan had failed to

establish either that he faced an individualized risk of persecution or that there was a

pattern or practice of persecution directed against ethnic Chinese Christians in Indonesia.

Gunawan has filed a petition for review of the BIA's order.

We have jurisdiction over Gunawan's petition pursuant to 8 U.S.C. § 1252(a)(1).

Our review of the BIA and IJ's decisions, see Chen v. Ashcroft, 376 F.3d 215, 222 (3d

3

Cir. 2004), is limited to the issues relating to the denial of withholding of removal.[1] We review questions of law de novo. See Gerbier v. Holmes, 280 F.3d 297, 302 n.2 (3d Cir. 2001). We review factual findings for substantial evidence. See Butt v. Gonzales, 429 F.3d 430, 433 (3d Cir. 2005).

We will deny Gunawan's petition for review because he is not entitled to withholding of removal. To establish eligibility for withholding, Gunawan was required to show a clear probability that he would be persecuted in Indonesia on account of a protected ground (such as his ethnicity or religion). See Zubeda v. Ashcroft, 333 F.3d 463, 469 (3d Cir. 2003); 8 C.F.R. § 208.16(b).

Gunawan argues that the BIA should have granted him withholding because the assaults that he and his friends and family suffered rise to the level of past persecution. His reports of criminal acts against him and his friends and family are disturbing; however, the record does not compel a conclusion contrary to that reached by the agency. As the IJ noted, the persons behind the attacks were not motivated by their victims's ethnicity or religion, although some of them may have lobbed a few epithets. As Gunawan himself essentially conceded at times, they had different motivations, such as their desire to steal a motorcycle or money, or their wish to raucously celebrate or lament the result of a soccer match. Even the harm to Gunawan's father's store during the 1998

---

[1]Not only are we statutorily precluded from reviewing the determination that the asylum application is untimely, see Sukwanputra v. Gonzales, 434 F.3d 627, 634 (3d Cir. 2006), but also Gunawan, despite a few references to asylum in his opening brief, has explicitly waived his claims for asylum and CAT relief. Reply Brief 2.

4

riots does not establish past persecution under the circumstances of this case, where Gunawan's father's business was targeted no more than any of the stores in the market. Gunawan failed to prove that he suffered past persecution and that he consequently would face an individualized risk of persecution on return to Indonesia. See Lie v. Ashcroft, 396 F.3d 530, 537 (3d Cir. 2005).[2]

Gunawan also argued that the BIA should have granted him withholding of removal because he would be subject to future persecution because of a practice or pattern of persecution against ethnic Chinese Christians in Indonesia. Ethnically Chinese (Christian or otherwise) citizens in Indonesia do face violence at the hands of their fellow citizens and suffer indignities, including discrimination. However, the record does not show that the treatment of ethnic Chinese Christians in Indonesia is the result of government action or acquiescence, or that it constitutes a pattern or practice of persecution. Cf. Lie v. Ashcroft, 396 F.3d at 537-38; Sukwanputra v. Gonzales, 434 F.3d 627, 637 n.10 (3d Cir. 2006).

In sum, Gunawan did not show a clear probability that he would be persecuted in Indonesia on account of a protected ground. Accordingly, he was not entitled to withholding of removal. We will deny the petition for review.

---

[2]Also, as in Lie, Gunawan's fear of persecution is undermined by the fact that he has family members who safely remain in Indonesia. Cf. 396 F.3d at 537.